IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Express Oil Change, LLC, | Civil Action No. 18-10416 |
| Plaintiff, | Hon. Victoria A. Roberts |
| v. | Magistrate Judge Elizabeth A. Stafford |
| Dix Express Oil Change, Inc., | |
| Defendant. | |

**STIPULATED ORDER GRANTING
MOTION FOR DEFAULT JUDGMENT,
<u>AND ENTERING CONSENT JUDGMENT</u>**

Plaintiff Express Oil Change, LLC ("Plaintiff" or "EOC") filed a motion seeking default judgment against Defendant Dix Express Oil Change, Inc., ("Dix" or "Defendant"), which has failed to appear or otherwise defend itself despite having been served with EOC's summons and complaint.

Dix continues to have not responded to EOC's Complaint or Motion, but instead has consented to the entry of this Order.

The parties represent that they have reached a confidential settlement of this litigation that includes the entry of this Order.

The Court finds this Order to be reasonable and good cause exists for entering it.

Therefore, the Court hereby ORDERS as follows:

20252034.9

## FINDINGS OF FACT

The following facts are established by Dix's default and by its subsequent stipulation to them.

1. EOC is one of the leading automotive service providers in the United States, with over 200 company-owned and franchised locations across 13 states. *See* Complaint (Dkt. 1) ¶10. By virtue of its longstanding and widespread use of the EXPRESS OIL CHANGE mark in connection with these services, EOC is the owner of the famous family of EXPRESS OIL CHANGE trademarks, including, but not limited to, EXPRESS OIL CHANGE, EXPRESS OIL CHANGE 10 MINUTE SERVICE, and EXPRESS OIL CHANGE & SERVICE CENTER. *Id.* ¶11. EOC's common-law EXPRESS OIL CHANGE marks along with the uses and Registrations reflected in Exhibit A are collectively referred to herein as the "EOC Family of Marks".

2. EOC has made an enormous investment in advertising and promoting its products and services under the EOC Family of Marks. *See* Complaint ¶13. As a result, Plaintiff has acquired valuable goodwill in association with the EOC Family of Marks, which have become widely recognized by the general consuming public of the United States as a designation of source for EOC's services. *See id.* EOC's customers have come to rely on the EOC Family of Marks as a symbol of quality and reliability. Since long before the acts of the Defendant complained of herein, EOC and/or its affiliates, franchisees and predecessors-in-

interest have continuously used one or more of the marks that comprise its EOC Family of Marks in interstate commerce. *See id.*

3. Dix operates a business that provides automobile repair and maintenance services under the trade name DIX EXPRESS OIL CHANGE, INC. *See id.* ¶15. Its physical location has signage using the confusingly similar name "EXPRESS OIL." In addition, Dix's Facebook page, "Express Oil Change & Service Center" (https://www.facebook.com/pages/Express-Oil-Change-Service-Center/168880389792861) uses the name and service mark EXPRESS OIL CHANGE and the logo "10 MIN EXPRESS OIL" to offer Defendant's services. Complaint ¶17. Collectively, EOC will refer to these as the "Infringing Marks." Most troublingly, the "About" section of Dix's Facebook page even contains *a link to EOC's website* (http://www.expressoil.com/)--directly passing Dix's operation off as if it were an official EOC location. A true and correct copy of Defendant's Facebook page is attached to the Complaint as Exhibit C.

4. EOC acted in good faith to resolve this dispute before bringing this lawsuit. Dix's then-current owner acted in bad faith by agreeing to remove the confusing marks, yet refusing to follow through on that commitment.

5. Dix represents, and EOC has no evidence to dispute, that the then-owner of Dix sold the business to its current owner without disclosing EOC's concerns or this dispute.

## CONCLUSIONS OF LAW

6. Weighing the "eight factors that are relevant in determining whether a likelihood of confusion exists," *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997), leads the Court to conclude that Dix's actions described above cause a high likelihood of confusion with EOC's Family of Marks. In particular, EOC's Family of Marks is commercially strong; the parties' marks, goods, and services are all materially identical to each other; the typical consumer will see no distinction between the parties; and Dix has shown an intent to infringe. Therefore, Dix has violated Sections 32(1), 43(a), and 43(c) of the Lanham Act, 15 U.S.C. §1051 *et seq.*

7. As a result of Dix's actions as described above, EOC has suffered irreparable injury that cannot be redressed by monetary damages.

8. The balance of harms resulting from a permanent injunction weighs decidedly in EOC's favor, and is in the public interest.

9. This case is "exceptional" as defined by 15 U.S.C. §1117(a), whether under the standard articulated in *Eagles, Ltd. v. American Eagle Foundation*, 356 F.3d 724, 728 (6th Cir. 2004) or the newer rule articulated by *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1758 (2014).

10. For the reasons described above, the Court can easily conclude on this record that Dix has acted willfully and in bad faith and, therefore, justifying an award of attorneys' fees and costs even under the pre-*Octane Fitness* standard. Such an award is certainly

4
20252034.9

warranted under the current, more flexible understanding of "exceptional case." Dix's willful conduct—such as continuing to display the Infringing Marks even after being warned of EOC's rights, and linking its own Facebook page to EOC's website, so as to pass Dix's business off as an official EOC location—is objectively unreasonable conduct motivated by a disregard for the law. Moreover, Dix's admission of EOC's allegations by virtue of its default leaves Dix without any affirmative defense or rejoinder to EOC's Complaint, leaving Dix's litigation position without any "substantive strength" whatsoever. Behavior like Dix's clearly needs to be deterred. Despite EOC's attempts to negotiate out of court, Dix's intransigence forced EOC to sue. EOC is entitled to compensation for the expense of enforcing its rights—especially since it has acted conservatively by not also seeking the monetary damages to which it is also entitled under the Lanham Act—and Dix's conduct cries out for deterrence.

11. The attorneys' fees sought by EOC are reasonable. To determine if a fee is reasonable, courts use the "lodestar" method: "the number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate, producing a lodestar figure; the court can then adjust this figure to reflect the degree of success obtained." *Granzeier v. Middletown*, 173 F.3d 569, 577 (6th Cir. 1999); *see Building Service Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401(6th Cir. 1995) ("It is well settled that the "lodestar" approach is the proper method for determining the amount of reasonable attorneys' fees."). As a guideline, courts look to the prevailing market rate, which is defined as the rate that lawyers of comparable skill and experience can reasonably expect to

5

command within the venue of the court of record. *See Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004); *see also* E.D. Mich. L.R. 54.1.2(b) (requiring declaration of counsel establishing these factors).

12. As described in the declarations attached as Exhibits E and F to EOC's Motion, the attorneys' fees and costs incurred through the filing of this motion are $6,814.20 by Attorney Brian D. Wassom of the Warner firm and $13,005.00 by Michael J. Douglas of the Leak firm. Each attorney's declaration attests and demonstrates that their rates (to wit, $430/hour for Attorney Wassom and $225/hour for Attorney Douglas) are well within the prevailing range for attorneys in their respective markets with their particular levels of experience. They also set forth the amount of necessary costs incurred by each firm in the course of litigating the case, which "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). *Compare FENF, LLC v. Yogabody Nats., LLC*, 2017 U.S. Dist. LEXIS 177523, *7-8, 2017 WL 4841440 (E.D. Mich. Oct. 26, 2017) (approving, in context of a motion for default judgment in trademark infringement case, a fee award at 2017 hourly rates of $425 and $315, for total of $15,413.00, and indicating approval of properly documented costs).

13. The number of hours incurred here are modest, given that the only tasks that proved necessary were preparing, filing, and serving the complaint, and preparing and filing this motion.[1] The involvement of Mr. Douglas (EOC's national counsel) and Mr. Wassom (its

---

[1] Fees spent on motions to recover fees are recoverable. *See Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686 (6th Cir. 2016).

local counsel) was essential. The brief nature of the case did not warrant involving additional attorneys, and these experienced attorneys were able to perform these tasks more efficiently than younger attorneys would have.

14. Therefore, EOC is entitled to a total award of **$19,819.20** in reasonable costs and fees under the Lanham Act.

WHEREFORE, it is hereby ORDERED that:

15. JUDGMENT IS HEREBY ENTERED in favor of Express Oil Change, LLC against and Dix Express Oil Change, Inc. in the amount of $19,819.20, with said amount to accrue post-judgment interest at the statutory rate.

16. Dix Express Oil Change, Inc., its principals, employees, agents, and all others acting in concert with any of them and with knowledge of this Order, are hereby PERMANENTLY ENJOINED from using, in connection with the advertisement or sale of goods or services or otherwise in commerce, the phrase "EXPRESS OIL" or any other words, phrase, or symbol likely to cause confusion with any of EOC's following marks: EXPRESS OIL CHANGE, EXPRESS OIL CHANGE 10 MINUTE SERVICE, and EXPRESS OIL CHANGE & SERVICE CENTER.

17. Dix Express Oil Change, Inc., its principals, employees, agents, and all others acting in concert with any of them and with knowledge of this Order, are further PERMANENTLY ENJOINED from representing, indicating, or suggesting that they are affiliated with, sponsored, or otherwise approved by Express Oil Change, LLC. By way of

example and for the avoidance of doubt, but without limitation, the enjoined parties are forbidden from displaying a hyperlink on any internet page in a manner that suggests an affiliation with Express Oil Change, LLC.

18. Pursuant to 15 U.S.C. §1116, Dix is ORDERED to serve on EOC within thirty (30) days after the issuance of this Order (or within such time as the Parties may have agreed between them), a report in writing and under oath setting forth in detail the manner and form in which Dix have complied with this Order.

This is a final order and closes the case.

Date: July 16, 2018

S/Victoria A. Roberts
Hon. Victoria A. Roberts
United States District Judge

So Stipulated:

/s/ Brian D. Wassom
Brian D. Wassom (P60381)
Warner Norcross & Judd LLP
2000 Town Center, Ste. 2700
Southfield, MI 48075-1318
248-784-5039
bwassom@wnj.com
Attorneys for Express Oil Change, LLC

/s/ with consent of Samer N. Jadallah
Samer Naim Jadallah (P62186)
4252 Maple St
Dearborn, MI 48126-3544
(313) 790-7479
attysamer@yahoo.com
Attorney for Dix Express Oil Change, Inc.